IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BERNIS TOLLIVER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 3:15-CV-2554-C |
| v. ) | (Consolidated with Civil Actions |
| ) | Nos. 3:15-CV-2561-C, 3:15-CV-2717-C, |
| YRC INC., d/b/a YRC Freight, ) | 3:15-CV-2866-C, 3:15-CV-3050-C, |
| ) | 3:15-CV-3421-C, 3:15-CV-3422-C, and |
| Defendant. ) | 3:15-CV-3841-C) |

## **ORDER**

On this day, the Court considered:

(1) Defendant YRC, Inc. d/b/a YRC Freight's (YRC) Motion for Summary Judgment, filed October 14, 2016;

(2) Plaintiffs Bernis Tolliver, Calvin Alexander, Patrick Butler, Terry Devereaux, and Lyndell Gibson's (Represented Plaintiffs) Response in Opposition to Defendant's Motion for Summary Judgment, filed November 18, 2016;

(3) Pro Se Plaintiff Lovie Berry's Response to Defendant's Motion for Summary Judgment, filed November 23, 2016;

(4) Pro Se Plaintiff Ronnie Helaire's Response to Defendant's Motion for Summary Judgment, filed November 23, 2016;

(5) Defendant YRC's Motion for Leave to File a Reply, filed December 2, 2016;

(6) the Represented Plaintiffs' Response in Opposition of Defendant's Motion for Leave to File a Reply, filed December 7, 2016; and

(7) Defendant YRC's Reply in Support of Its Motion for Summary Judgment, filed contemporaneously with its Motion for Leave to File a Reply on December 2, 2016.

Having considered the foregoing, the Court is of the opinion that the Motion for Leave to File a Reply should be **GRANTED** and the Court considers YRC's Reply. The Court is further of the opinion that YRC's Motion for Summary Judgment should be **GRANTED**.

## I. BACKGROUND

This is a consolidated case in which the seven Plaintiffs assert claims arising under Title VII of the Civil Rights Act against Defendant YRC. Plaintiffs are all African-American citizens who are, or were, employed by YRC (a freight company) at its Irving terminal building. Plaintiffs allege that they have experienced various forms of racial harassment in multiple incidents at YRC spanning more than ten years. Specifically, Plaintiffs claim that they have discovered hangman's nooses on YRC property on multiple occasions, that they have seen racially offensive graffiti on company property, and that they have been retaliated against for filing charges with the Equal Employment Opportunity Commission (EEOC) regarding these incidents. YRC moves for summary judgment on each of the Plaintiffs' claims.

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013). A material fact is one that might affect the outcome of the case under the governing law; a dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Tagore*, 735 F.3d at 328 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (quotations omitted). To determine whether a genuine dispute exists such that the case must be submitted to a jury, courts must consider all of the evidence in the light most

favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, refuse to make credibility determinations or weigh the relative strength of the evidence, and disregard all evidence favorable to the movant that the jury would not be required to believe. *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013).

If the burden at trial would be on the non-moving party, the movant must merely demonstrate "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). The burden then shifts to the non-moving party to produce evidence showing the existence of a genuine issue of material fact for trial. *Bayle*, 615 F.3d at 355; Fed. R. Civ. P. 56(e). To meet this burden, the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial. *Bayle*, 615 F.3d at 355. "[C]onclusory statements, speculation, and unsubstantiated assertions" are not specific facts and are not sufficient to defeat a motion for summary judgment. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## III. DISCUSSION

### A. Incidents Not Alleged in Plaintiffs' First Amended Complaint

On Plaintiffs' motion, the Court consolidated all seven of their lawsuits into this single action in an order dated February 17, 2016. Plaintiffs subsequently filed their First Amended Complaint (jointly) on May 17, 2016.[1] As a general rule, "an amended complaint ordinarily

---

[1] Plaintiffs Lovie Berry and Ronnie Helaire fired attorneys Gerald Smith and Dominique Sims (who previously represented all of the Plaintiffs and continue to represent the other five Plaintiffs) and informed the Court that they each desired to proceed pro se. The Court granted the joint motions of Mr. Smith and Ms. Sims to withdraw from their representation of Plaintiff Berry and Plaintiff Helaire on July 28 and July 29, 2016, respectively. However, Berry and Helaire have never sought leave to file any amended pleadings of their own, and the Plaintiffs' joint complaint remains the only live pleading. The Court is therefore of the opinion that it is

3

supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985). Plaintiffs' First Amended Complaint, filed May 17, 2016, identifies all seven Plaintiffs as parties, refers to "Plaintiffs" or "all Plaintiffs" globally, and asserts three causes of action on behalf of the collective Plaintiffs; but the document makes no reference to any of the Plaintiffs' prior, individual complaints. Because Plaintiffs jointly filed this amended complaint without incorporating—or even referencing—their earlier pleadings, it is clear that the joint amended complaint superseded each of the complaints filed by the individual Plaintiffs earlier in the litigation and is now the only live pleading.

Comparing that pleading to the summary judgment briefing, the Court notes that Plaintiffs have briefed several alleged incidents and accusations of discrimination that are not included in their First Amended Complaint and that are not contained anywhere in their charges filed with the EEOC. *See* Pls.'s First Am. Compl.; Def.'s App. in Supp. of Its Mot. for Summ. J., Ex. 16. While it is true that previously unknown facts may come to light through the discovery process—and Plaintiffs may certainly rely on new evidence that was not included in their pleadings but is related to their existing allegations—Plaintiffs are not free to circumvent the rules for amending pleadings by complaining of entirely new incidents for the first time in their summary judgment response. If Plaintiffs desired to complain of newly discovered incidents of discrimination or harassment, then they should have sought leave to amend their

---

appropriate to consider the claims of Berry and Helaire together with those of the five Represented Plaintiffs, all of which claims are contained in Plaintiffs' First Amended Complaint.

4

pursuant to Rule 15; the Court will not consider evidence of entirely new allegations that have been raised for the first time in summary judgment briefing.

The Court therefore limits its analysis to those claims and incidents of discrimination that were presented in Plaintiffs' First Amended Complaint as forming the bases for their causes of action: (1) the 2015 noose incidents, (2) the 2015 graffiti incident, (3) Plaintiff Alexander's allegations that he was assigned duties typically belonging to white employees, (4) Plaintiff Gibson's allegations that he was assigned less desirable work assignments than white employees, and (5) Plaintiffs' claims that they were retaliated against.

## B. Factual Allegations & Continuing Violations Doctrine

Some of the Plaintiffs have alleged that they were aware of many nooses at the YRC facility prior to 2015 (some dating all the way back to 1999). YRC contends that these complaints are time-barred because they occurred more than 300 days prior to the filing of Plaintiffs' EEOC charges, and the parties disagree as to whether the continuing violations doctrine should apply to these allegations to save them from the 300-day bar. *See Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). The Court need not decide this controversy because it finds that the prior alleged incidents are not supported by competent summary judgment evidence. Instead, the Court is of the opinion that Plaintiffs' simple assertions that "between ten and fifteen hangman's nooses" were discovered "between 1999 and 2016" is too vague and unsubstantiated to serve as valid summary judgment evidence. This testimony does not identify specific dates when or locations where the alleged nooses were discovered, does not identify who discovered them, and does not even name which of the Plaintiffs witnessed them. "[C]onclusory

statements, speculation, and unsubstantiated assertions" are not specific facts and are not sufficient to defeat a motion for summary judgment. *RSR Corp.*, 612 F.3d at 857.

But even if the Court were to determine that there was sufficient evidence of the prior nooses to apply the continuing violations doctrine (and therefore were to take into consideration a recurring pattern of nooses since 1999), or even if the Court were to consider these alleged nooses as simply relevant background information providing further context for the 2015 incidents, it would be immaterial to the outcome; the Court would still conclude that Plaintiffs have failed to establish a claim for a hostile work environment because they have failed to show how the alleged prior nooses affected a term, condition, or privilege of their employment (as discussed further below). Plaintiffs admit that they did not begin to file EEOC charges in this case until February and March of 2015. Pls.' First Am. Compl. 3–6. Plaintiffs cannot reasonably expect the Court to believe that they have been continually harmed by enduring repeated racial harassment at their job since 1999 but made no effort to report it to authorities for over fifteen years; such behavior would simply not be reasonable. Even if the continuing violations doctrine operates to preserve some conduct that may otherwise fall outside the 300-day EEOC time bar, the law does not allow a citizen to sleep on his rights and Plaintiffs have previously made no effort to seek legal redress in all of this time. The fact that each of the Plaintiffs chose to continue working at YRC without acting to defend their rights until 2015 indicates to the Court that the conditions of their employment were not so substantially affected as to create a Title VII violation. Further, Plaintiffs have not provided any evidence that YRC was even made aware of any nooses prior to 2015.

6

The same analysis applies to allegations by some of the Plaintiffs that they witnessed racial graffiti in the bathroom "like paint on the wall" going back to the late 1990s. *See* Pls.' App. A, at 7. None of the Plaintiffs testified to reporting this graffiti to YRC, claimed that it interfered with their employment, or alleged that it was conduct giving rise to their causes of action.

For these reasons, the Court does not consider the conclusory allegations of prior noose discoveries or prior graffiti and limits its analysis to the two noose incidents and one graffiti incident complained of in 2015, shortly before Plaintiffs filed their charges with the EEOC.

## C. Causes of Action[2]

Plaintiffs assert claims against YRC for racial harassment (arising under Title VII), retaliation (also under Title VII), and intentional infliction of emotional distress. The Court addresses each in turn.

### 1. Title VII Racial Harassment (Hostile Work Environment)

For purposes of Title VII, harassment (or a hostile work environment) exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). To establish a

---

[2]Because the Court concludes that Defendant YRC is entitled to summary judgment on each of the Plaintiffs' claims even when fully considered, it was not necessary for the Court to address YRC's arguments that several of these claims are barred by the statute of limitations or by settlement agreements entered into with certain plaintiffs in previous lawsuits. The Court makes no finding that would reject or foreclose those arguments but simply determines that it is unnecessary to consider them.

hostile work environment claim, each of the Plaintiffs must show that (1) they belong to a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). As to the fourth element, for racial harassment to affect a term, condition, or privilege of employment, the law requires that the harassment must be "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation omitted). Courts in this circuit are instructed to consider the following circumstances: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, rather than a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Id.* (internal quotation omitted).

### a. All Plaintiffs - Noose Incidents

Even assuming that Plaintiffs can satisfy all of the first three elements, there is no evidence showing how the noose incidents affected a term, condition, or privilege of any Plaintiff's employment. The Fifth Circuit has stated that the mere presence of a noose in the workplace, while extremely serious and reprehensible, does not automatically create a per se hostile work environment (particularly when a plaintiff cannot show that he saw the noose personally or that its display was directed at him). *Hudson v. Cleco Corp.*, 539 F. App'x 615, 620 (5th Cir. 2013). And the discovery of a noose alone is insufficient to create a hostile work environment when the plaintiff does not assert that the incident "changed the terms or conditions

8

of his employment." *Brooks v. Firestone Polymers, LLC*, 640 F. App'x 393, 400 (5th Cir. 2016). None of the Plaintiffs in this case personally discovered the nooses and none of them contend that the nooses were directed at them individually; additionally, none of the Plaintiffs have shown that the discovery of the nooses changed anything about their daily work at the Irving facility or that the nature of their employment was otherwise impacted in any way. The Court is of the opinion that none of the Plaintiffs' allegations have established how the nooses were so "severe or pervasive" as to alter the conditions of their employment at the freight terminal. *Ramsey*, 286 F.3d at 268.

Further, a defendant has no liability under Title VII "when harassment occurred but the defendant took 'prompt remedial action' to protect the claimant." *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). The precise meaning of prompt remedial action "is a fact-specific inquiry" but generally requires the employer to have taken remedial steps reasonably calculated to stop the harassment. *Id.* In this case, the evidence shows that YRC assigned the company's EEO Compliance Manager, Sue Harrison, to launch an investigation on the same day that the first noose was discovered (February 5, 2015). Harrison flew to Dallas the very next day and assigned no fewer than six additional human resources employees to assist with the investigation. A few days later, YRC instituted a "secret witness program" and offered a $25,000 reward for information leading to the positive identification of the perpetrator(s). Following the discovery of the second noose (on February 12, 2015), Harrison expanded the scope of her investigation and YRC ultimately interviewed more than 450 employees and reviewed more than 245 hours of video surveillance over the course of a 2-month investigation. The company further reported the incidents to the FBI and to the Irving Police Department, hired

additional security guards to monitor and patrol the Irving facility, removed and prohibited the use of all rope throughout the facility, gave weekly shift reminders stressing the company's anti-discrimination policies, and mailed letters to every employee concerning the incidents and the company's reaction from the Senior Vice President of Labor and Employee Relations. Def.'s Mem. in Supp. of Its Mot. for Summ. J. 6–10.

In sum, it is hard to imagine what else YRC could have done in response to the noose incidents, and the Court is satisfied that the company's response constitutes prompt remedial action.[3] *See Williams-Boldware*, 741 F.3d at 640. Plaintiffs have failed to put forth competent evidence to establish the fourth and fifth elements and have therefore failed to maintain their claim of harassment or hostile work environment with regard to the noose incidents. *Ramsey*, 286 F.3d at 268. YRC is entitled to summary judgment on these claims.

### b. Plaintiffs Berry, Butler, Devereaux, Tolliver, and Gibson - Graffiti

The Court similarly concludes that the five Plaintiffs complaining of allegedly racial graffiti discovered on a YRC truck have failed to produce any evidence supporting the fourth or fifth elements of their hostile work environment claim. The graffiti complained of appears to be an isolated incident that none of the Plaintiffs actually witnessed themselves but only heard about through co-workers or viewed on cell phone pictures. None of these Plaintiffs have pleaded how the graffiti affected a term, condition, or privilege of their employment, and none of them have

---

[3] While Plaintiffs have complained that the company's investigation ultimately did not lead to the discovery of the individual(s) responsible for the nooses, the law requires only that YRC take the incident seriously, make a legitimate effort to promptly and thoroughly investigate, and immediately implement remedial and/or disciplinary measures based on the results of the investigation—it does not impose a duty on YRC to actually succeed in catching those responsible for the incident. *See Williams-Boldware*, 741 F.3d at 640; *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996).

shown how YRC failed to take prompt remedial action. *Ramsey*, 286 F.3d at 268; *Williams-Boldware*, 741 F.3d at 640. To the contrary, the evidence indicates that YRC promptly assigned human resources personnel to investigate the graffiti, established a time line of the movements for the trailer that was the subject of the graffiti, conducted interviews with all employees that could have come into contact with the trailer, and included reminders about graffiti and company anti-vandalism policy in weekly shift meetings to emphasize the importance of keeping this kind of conduct out of the workplace. Def.'s Mem. in Supp. of Its Mot. for Summ. J. 10, 31. Accordingly, YRC is entitled to summary judgment on these claims.

### c. Plaintiff Alexander - Work Assignments

In addition to those incidents discussed above, Plaintiff Alexander asserts that on three occasions he experienced racially harassing conduct that amounted to humiliation. First, he complains that in October 2013, he and another African-American were sitting and talking with two white employees. After the white employees left, a YRC supervisor instructed Alexander and the other African-American employee to "move around." Second, he claims that sometime in 2013, a YRC supervisor asked him to complete another employee's assigned tasks because the supervisor thought Alexander would do a better job. Third, he complains that in May 2014, a route was assigned to a white driver even though Alexander was next in line.

Alexander has not shown that any of these incidents affected a term, condition, or privilege of his employment; nor does he plead that YRC was made aware of the incidents but failed to act on them. *See Ramsey*, 286 F.3d at 268; *Williams-Boldware*, 741 F.3d at 640. Subjective offense taken at incidents that do not have a clearly obvious racial motivation does not

rise to the level of harassment and is not sufficient to establish a claim of a hostile work environment. YRC is thus entitled to summary judgment on Alexander's claims.

### d. Plaintiff Gibson - Work Assignments

Finally, Plaintiff Gibson also asserts that he has experienced harassment on multiple occasions because YRC supervisors often assign African-American employees to do the work tasks of white employees and conspire to give white employees more desirable tasks. He further claims that African-American employees get "singled out" and "broken up" when they are congregating, while white employees are generally left alone.

But Gibson's allegations are generalized and conclusory and he does not explain what evidence supports his subjective belief that supervisors are intentionally discriminating against African-American employees in the assignment of tasks or singling out African-Americans for disparate treatment. A generalized allegation that supervisors "single blacks out and Caucasians get better privileges" is insufficient summary judgment evidence to maintain a claim for hostile work environment. Def.'s App. in Supp. of Its Mot. for Summ. J. 287. Further, Gibson has not shown that any particular incident or collection of incidents affected a term, condition, or privilege of his employment; nor does he plead that YRC was made aware of any incidents but failed to act on them. *See Ramsey*, 286 F.3d at 268; *Williams-Boldware*, 741 F.3d at 640. Therefore, YRC is entitled to summary judgment on Gibson's claims.

### e. Other Allegations

As discussed above, the Court declines to consider allegations of discrimination that are discussed in Plaintiffs' summary judgment briefing but were never complained of in either their separate EEOC complaints or their joint First Amended Complaint (including allegations

12

concerning the use of racial slurs, derogatory comments, graffiti, and others). The Court notes, however, that even if it were to consider each of these additional allegations, it would still grant summary judgment to YRC for the several reasons stated in YRC's thorough motion and reply.

### 2. Title VII Retaliation

The *McDonnell Douglas* framework applies to retaliation claims under Title VII. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That burden-shifting analysis first requires a plaintiff to establish a prima facie case of retaliation. To make a prima facie case, the Plaintiffs must show that (1) they engaged in protected activity, (2) they suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Turner*, 476 F.3d at 348.

This claim necessarily fails as to all of the Plaintiffs except Helaire because none of them have provided summary judgment evidence that they suffered any conduct constituting an adverse employment action and they have therefore failed to establish a prima facie case of retaliation.[4] *Id.* Some of the Plaintiffs claim that they were retaliated against by being given poor job assignments on certain shifts. But none of them have shown that they were assigned tasks outside of the normal responsibilities of their positions, and this is therefore not evidence of an adverse employment action; only Plaintiff Helaire alleges that he suffered an adverse

---

[4]To the extent that Plaintiffs allege they were retaliated against by International Brotherhood of Teamsters, those claims were dismissed without prejudice by this Court's Order of Partial Dismissal, entered June 15, 2016 (pursuant to a Stipulation of Dismissal filed by Plaintiffs).

13

employment action in the form of termination (the other Plaintiffs are all still full-time employees).

As for Plaintiff Helaire, the Court is still of the opinion that he has failed to establish a prima facie case because he has not shown that a causal link exists between his termination and the filing of his EEOC complaints. As the Fifth Circuit has noted, "temporal proximity alone is insufficient to prove but for causation," and Helaire has not presented any other competent summary judgment evidence showing that his filing of EEOC complaints resulted in his termination from the company. *See Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). Even assuming that Helaire could establish a prima facie case, his claim for retaliation would still fail because YRC has offered a legitimate, non-discriminatory reason for his termination (that he was involved in an accident with a company vehicle and failed to report that accident in violation of mandatory company policy); and that reason was even upheld by a neutral grievance committee that independently found sufficient evidence to justify Helaire's termination. Helaire has offered no evidence that YRC's nondiscriminatory reason was a pretext for retaliating against his EEOC complaints, and YRC is therefore entitled to summary judgment on the retaliation claims.

**3. Intentional Infliction of Emotional Distress**

Finally, Plaintiffs have all asserted a claim for intentional infliction of emotional distress. This claim alleges the same facts and complains of the same conduct as Plaintiffs' Title VII claim and is therefore preempted by the Title VII claim as a matter of law. *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Leave to File a Reply is **GRANTED** and Defendant's Motion for Summary Judgment is also **GRANTED**. Judgment will be entered that Plaintiffs take nothing on their claims against Defendant YRC.

SO ORDERED this 8th day of February, 2017.

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE